UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Briana Monserat Gonzalez,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security,<br><br>Defendant. | No. 1:23-cv-01611-WBS-GSA<br><br>**FINDINGS AND RECOMMENDATIONS TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, TO REMAND FOR FURTHER PROCEEDINGS AND TO DIRECT ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT COMMISSIONER OF SOCIAL SECURITY**<br><br>**(Doc. 20, 22)** |

### I.    Introduction

Plaintiff Briana Monserat Gonzalez seeks judicial review of a final decision of the Commissioner of Social Security which denied supplemental security income benefits under Title XVI of the Social Security Act.[1]

### II.    Factual and Procedural Background

Plaintiff previously received supplemental security income benefits based on disability as a child. AR 139–56. When Plaintiff turned 18 her eligibility was redetermined under the rules and regulations applicable to adults as provided in section 1614(a)(3)(H) of the Act.

On December 29, 2020, the Commissioner determined Plaintiff was no longer disabled as of December 1, 2020, which was upheld on reconsideration. The ALJ held a hearing on March 21, 2023. AR 40–80. The ALJ issued an unfavorable decision on July 5, 2023. AR 14–39. The Appeals Council denied review on October 5, 2023, and this appeal followed.

### III.    The Disability Standard

Pursuant to 42 U.S.C. §405(g), "This court may set aside the Commissioner's denial of

---

[1] The parties did not consent to the jurisdiction of a United States Magistrate Judge.  Doc. 4, 9.

1

disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is evidence that could lead a reasonable mind to accept a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996). The court must consider the record as a whole and may not affirm by isolating supporting evidence. *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether a claimant engaged in substantial gainful activity during the period of alleged disability, 2- whether the claimant had medically determinable "severe impairments," 3- whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, 4- whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and 5- whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. See, 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that

Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV. The ALJ's Decision

The ALJ found that Plaintiff had the following severe impairments: scoliosis of the thoracic spine, diverticulosis, depression, anxiety, attention deficit hyperactive disorder (ADHD) and unspecified trauma. AR 19. The ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 19.

The ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 CFR 416.967(b) with the following limitations:

> the claimant can occasionally climb ramps, stairs, ladders, ropes, and scaffolds, balance, crawl, crouch, kneel, and stoop. The claimant can perform jobs of a non-complex nature, requiring the performance of no more than simple routine tasks, and is able to maintain occasional, noncollaborative contact with coworkers. The claimant should have no contact with members of the general public.

AR 21.

The ALJ found that Plaintiff had no past relevant work. AR 30. In reliance on the Vocational Expert's testimony, the ALJ concluded that there were jobs existing in significant numbers in the national economy that Plaintiff could perform: cleaner housekeeping, assembler production, and inspector hand packaging. AR 31. The ALJ therefore concluded that Plaintiff's disability ended on December 1, 2020, and that she had not become disabled again after that date. AR 32.

### V. Issues Presented

Plaintiff asserts one claims of error: that the mental RFC is not supported by substantial evidence because the ALJ failed to properly evaluate the treating source opinion of Dr. Bahter.

#### A. Legal Standard

Before proceeding to steps four and five, the ALJ determines the claimant's residual functional capacity (RFC) which is "the most [one] can still do despite [his or her] limitations" and

3

represents an assessment "based on all the relevant evidence." 20 C.F.R. § 416.945(a)(1). The RFC must consider all of the claimant's impairments, severe or not. 20 C.F.R. §§ 416.920(e), 416.945(a)(2). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

For applications filed on or after March 27, 2017, the new regulations eliminate a hierarchy of medical opinions and provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization, and other factors. 20 C.F.R. § 404.1520c(c). Supportability and consistency are the two most important factors, and the agency will articulate how the factors of supportability and consistency are considered. *Id*

### B.     Analysis

#### 1.     Summary of Dr. Bahter's Opinion

Dr. Bahter completed a "mental disorder questionnaire for evaluation of ability to work," dated August 3, 2022, describing a treatment relationship consisting of monthly visits since July of 2021. AR 974–976. Dr. Bahter identified diagnoses of anxiety, depressive disorder, trauma history, and ADHD. With respect to the impact of the patient's history on her ability to work, Dr. Bahter identified a history of repetitive trauma from a young age creating a great deal of anxiety. AR 974. When asked whether mood or affect are affected to a degree that it would impact the patient's ability to work, Dr. Bahter checked <u>yes</u> due to severe anxiety. AR 974. The form had 2 check boxes which addressed various areas of mental functioning, asking the physician whether: 1- the patient had abnormalities in any area that would affect the claimant's ability to work at all,

and 2- if so, would it impair the patient's ability <u>to perform simple work for 2 hours at a time, 8 hours per work day</u>. AR 974. With respect to concentration, Dr. Bahter checked both boxes. AR 974. With respect to all other areas, Dr. Bahter checked <u>no</u>. AR 974.

A separate set of check boxes addressed different areas of mental functioning, asking: 1- if there were any abnormalities affecting the patient's ability to work, and 2- (slightly different than the prior check boxes) if so, whether it would impair the patient's ability <u>to perform full-time work, week after week</u>. AR 975. With respect to mood swings, Dr. Bahter answered affirmatively to the first question but not to the second question. AR 975. With respect to all other areas, Dr. Bahter checked <u>no</u>. AR 975.

As to the question "has the patient's social functioning become deficient to the point that it would impair their ability to work with supervisors, co-workers, or public nearby," Dr. Bahter answered <u>yes</u> and added a comment stating, "I am hopeful for improvement."[2] AR 975.

Dr. Bahter also answered <u>yes</u> to the question that asked whether Plaintiff's social dysfunction impairs the patient's ability to adapt to common workplace stress. AR 975. Dr. Bahter also answer <u>yes</u> to the question that asked whether the patient's condition was likely to improve in the next 12 months or less, though Dr. Bahter added a comment explaining "Too many variables to predict, I am hopeful for improvement." AR 975.

### 2. Discussion

The ALJ addressed the opinion as follows:

> The undersigned has considered this report, but only finds it somewhat persuasive. He notes that while Dr. Bahter indicated the claimant would be impaired in performing simple work for two hours at a time, this is not fully consistent with the overall record that indicates the claimant was able to complete high school doing online school and one semester of college. He also indicates that the records support a finding that the claimant's condition improved with treatment, although she may have had an episode of decompensation after the assault. He also notes that she was

---

[2] As Plaintiff correctly emphasizes, "hoping" for improvement is not tantamount to expecting or predicting improvement.

> able to pay attention and answer questions appropriately at the hearing, she cares for a dog, leaves her home multiple times a day to walk the dog, and has friends, as discussed above. These things tend to support less restriction in social functioning than opined by Dr. Bahter; however, the undersigned finds that this opinion is supportive of the limitation indicated in the residual functional capacity with regard to coworkers and the general public. While the claimant does appear to have some limitation associated with her mental symptoms, the overwhelming evidence tends to indicate she would be able to perform simple tasks with limited contact with others. In further support of this finding the undersigned notes the claimant is of at least average intelligence, did not require special education assistance to complete her high school curriculum, she has normal cognition and organized thoughts, and she was able to pass one semester of college even though she was not interested in the classes (Exhibits B28E; B20F, p. 43; B23F, pp. 2, 7, 12). (AR 28, emphasis added).

Plaintiff contends the ALJ's supportability analysis was deficient insofar as it ignored Dr. Bahter's examination findings which were supportive of Dr. Bahter's identified limitations. It is worth noting at the outset that Defendant contends that "Dr. Bahter's statement did not provide much in the way of functional limitations." However, the functional limitations Dr. Bahter <u>did</u> identify, as opposed to the potential limitations Dr. Bahter did <u>not</u> identify, were the following as set forth in more detail above: 1- work preclusive concentration limitations that would impair the claimant's ability to perform simple work for two hours at a time or for an eight-hour workday, and 2- social functioning had become deficient to the point that it would impair her ability to work with supervisors, coworkers, or public nearby, though Dr. Bahter was hopeful for improvement.

### a. **Concentration**

As quoted above, the ALJ was not persuaded that Plaintiff had work preclusive concentration limitations. The ALJ noted that Plaintiff completed high school, one semester of college, and that the records support a finding that the claimant's condition improved with treatment although she may have had an episode of decompensation after an assault.

The ALJ acknowledged the episode of decompensation without describing the same and its relationship to Plaintiff's concentration. Further—although Plaintiff did complete

one semester of online classes after a sexual assault—the ALJ elsewhere acknowledged that: 1- Plaintiff described her concentration as "not great," 2- Plaintiff did not do well the following semester despite her stated intention to pursue an easier major because math was too difficult, 3- she reported anxiety and agoraphobia onset around the same time (September of 2022), and 4- she dropped out as of November 2022 despite her intention to return to school in the future.  AR 27.

Defendant emphasizes that the ALJ cited three treatment notes describing Plaintiff as having normal cognition, normal speech, normal orientation, normal thought control, and normal thought content.  *E,g,* 1272-73.  Although this evidence as to concentration was mixed, importantly the ALJ's finding was partially based on a consideration that "*she was able to pay attention and answer questions appropriately at the hearing*." AR 28 (emphasis added).  As Plaintiff emphasizes, the Ninth Circuit has suggested that this so called "sit and squirm analysis" is not persuasive.  *See* Coats v. Heckler, 733 F.2d 1338, 1341 (9th Cir. 1984)).  Here as well, it would likewise be unpersuasive for the ALJ to estimate the claimant's mental faculties based on the ALJ's personal observations of Plaintiff during the hearing, particularly as a basis for rejecting the contrary opinion of a treating source with mental health expertise who examined the claimant monthly for 1 year.

### b.     Social Interaction

As to Social Interaction, the ALJ partially rejected Dr. Bahter's opinion as to work preclusive social limitations because: 1- she was able to pay attention and answer questions appropriately at the hearing, 2- she cares for a dog, leaves her home multiple times a day to walk the dog, and 3- "has friends, as discussed above."  The ALJ explained that "these things tend to support less restriction in social functioning than opined by Dr. Bahter."

To begin, the ALJ noted Plaintiff has friends, but despite the reference to "friends"

plural, Plaintiff testified she has "just one friend" (AR 56) who had to accompany her and calm her down during Plaintiff's brief attempt work (AR 69).

Secondly, Plaintiff explains that the ALJ failed to reconcile the findings concerning social interaction with Dr. Bahter's objective treatment notes and subjective symptoms reflected therein demonstrating violent and antisocial behavior, including: 1- on October 11, 2021 she was positive for suicidal and homicidal ideation (AR 1296), 2- on January 14, 2022 her affect was intense warranting Cymbalta dosage increase, and she reported having the urge to hit someone during a family fight (AR 1290–92), 3- a March 10, 2022 visit noting intense affect and auditory hallucinations (AR 1287), 4- an April 14, 2022 visit noting increased anxiety and jumpiness after a car accident, fairly intense affect, and resultant prescription for Trazodone 50-150mg (AR 1286), 5- a May 17, 2022 visit noting 7 out of 10 anxiety and depression levels (AR 1281), and 6- an August 3, 2022 visit noting intense affect, needs more ADHD medication (AR 1276).

Plaintiff further contends the ALJ similarly erred with respect to the consistency analysis by failing to reconcile pertinent findings of other providers, including: 1- an April 29, 2021 behavioral reassessment at Uplift (Ex. 15F) noting angry outbursts, self-isolation, verbal and physical aggression impacting ability to have social relationships, abandoning tasks or appointments due to anxiety while using public transportation, hypervigilance and distrust of others (AR 957), 2- a 5150 hold in April 2020 due to posing a danger to herself and others (AR 708), 3- an ER visit on March 22, 2022 for treatment of her hands after punching a door (AR 1307), 4- an August 8, 2022 visit noting mood swings, flashbacks and nightmares from a history of physical, verbal, and sexual abuse (AR 1099), 5- a September 14, 2022 visit noting anxiety with agoraphobia as the reason why she was taking online classes and she was noted to have made no progress in psychotherapy (AR 1065), 6- a

September 27, 2022 visit similarly noting she takes online classes because she feels anxious to meet others (AR 1051), 7- a December 20, 2022 visit noting minimal progress without significant change in her mood, affect, thought process, motor activity, speech, behavior, functioning, and medical condition. (AR 1018), and 8- a January 13, 2023, visit noting she hears voices (AR 1255), sees shadows, that people are out to get her (AR 1266) and she was continued on Cymbalta, Concerta, Clonidine, and Trazodone. (AR 1268).

Defendant's response to these findings is not persuasive. Moreover, Defendant's analysis spans roughly 3 pages and largely relies on surface level findings of non-specific "improvement" and Plaintiff's ability to interact with dogs and children. Resp. at 2. With respect to the supportability analysis, Defendant cites only one normal mental status examination. Resp. at 3 (citing AR 1272–73). Importantly, Defendant does not squarely address most of Plaintiff's factual discussion. Although Plaintiff does ultimately concede that the ALJ did acknowledge much of the above-cited factual discussion, Plaintiff asserts that it "provides no insight into how the ALJ determined that the 'overwhelming evidence tends to indicate that she would be able to perform simple tasks with limited contact with others' and supports the ALJ's rejection of Dr. Bahter's MRFC."

Although Plaintiff's critique is a relatively common one, it resonates here because: 1- the ALJ's factual discussion—starting with the psychiatric review technique at step 3—spanned 11 single spaced pages, makes it difficult for the reader to follow the ALJ's analytical path, 2- the ALJ did not identify a representative or illustrative sample of objective findings that would undermine Dr. Bahter's opinion, and 3- the ALJ did not attempt to incorporate by reference the relevant findings from the earlier summary, or offer an encapsulation of what the ALJ believed the records demonstrated in relevant respects

9

identified by Dr. Bahter (concentration and social capacity[3]).  In short, the ALJ's analytical path cannot be discerned here.

### VI.  Findings

Substantial evidence and applicable law do not support the ALJ's conclusion that Plaintiff was not disabled.  Remand is warranted for the ALJ to reevaluate Dr. Bhater's opinion and other relevant evidence concerning Plaintiff's functionality in the areas of concentration and social interaction/proximity.

### VII.  Recommendations

For the reasons stated above, the recommendation is that:

1. Plaintiff's motion for summary judgment (Doc. 20) be **GRANTED.**
2. Defendant's cross-motion (Doc. 22) be **DENIED.**
3. The matter be remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the Findings and Recommendations.
4. That the Court Clerk of Court be directed to enter judgment in favor of Plaintiff and against Defendant Commissioner of Social Security.

### VIII.  Objections Due Within 14 Days

These Findings and Recommendations will be submitted to the U.S. District Judge assigned to the case per 28 U.S.C. § 636(b)(l). Within 14 days of these Findings and Recommendations, any party may file written objections. The document should be titled "Objections to Magistrate Judge's Findings and Recommendations."  The failure to file objections within the specified time may result

---

[3] Social "interaction" might not be the best phraseology here because Plaintiff's testimony suggests that physical proximity to others is as much of an obstacle as social interaction.  *See* AR 59 (describing paranoia when strangers walk past her while she is on the treadmill).  As well, the questionnaire Dr. Bahter filled out also describes physical proximity.  AR 975 ("Has this patient's social functioning become deficient to the point that it would impair their ability to "work with supervisors. co-workers. or public nearby?") (emphasis added).  The RFC, by contrast, discusses the ability to engage in workplace social interaction, which is the more common functional capacity assessed. The record here, however, suggests proximity and interaction with others are both obstacles for Plaintiff.

in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014).

IT IS SO ORDERED.

    Dated:   **April 28, 2025**                             **/s/ Gary S. Austin**
                                                                                  UNITED STATES MAGISTRATE JUDGE